Augustin ARREDONDO and Leticia Arredondo, Individually and As Next Friends of Samuel Alejandro Arredondo, Deceased, Appellants,

v.

Antonio RODRIGUEZ, M.D., Appellee.

No. 04–05–00258–CV.

Court of Appeals of Texas, San Antonio.

March 22, 2006.

Rehearing Overruled April 26, 2006.

Craig S. Smith, Law Office of Craig S. Smith, Corpus Christi, Ronald Rodriguez, Law Office of Ronald Rodriguez, a Professional Corp., Laredo, for appellants.

Carlos Villarreal, Hermansen, McKibben, Woolsey & Villarreal, L.L.P., Richard C. Woolsey, Barger, Hermansen, McKibben & Villarreal, L.L.P., Corpus Christi, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from a take-nothing summary judgment rendered in favor of appellee in the underlying medical malpractice case filed by appellants, who are the plaintiffs below.

## BACKGROUND

Plaintiffs sued appellee and others following the tragic death of plaintiffs' four-day-old infant son (Samuel), asserting

claims for medical malpractice, negligence, fraud, misrepresentation, and gross negligence. According to plaintiffs, Samuel died because the treating doctors and nurses failed to administer antibiotics to the mother, prior to delivery, to treat Group B strep, which is an infection that can spread to an unborn child. Plaintiffs also allege the doctors and nurses failed to treat Samuel immediately following his birth with antibiotics, and later after his discharge when the family returned to the emergency room.

As a result of a settlement, all defendants were non-suited except appellee, Dr. Antonio Rodriguez. Appellee filed his first no-evidence motion for summary judgment asserting there was no evidence establishing a breach of the applicable standard of care and no evidence of causation. The trial court granted the motion; however, the court improperly rendered judgment on plaintiffs' fraud claims, and plaintiffs objected. The trial court modified its order to clarify that the fraud claims remained pending. Thereafter, appellee filed a second motion for summary judgment, asserting that plaintiffs had miscast their medical malpractice claim as a fraud claim, or alternatively, there was no evidence on any element of the fraud claim. The trial court rendered a final take-nothing summary judgment in favor of appellee. Plaintiffs appeal the summary judgment on their negligence and malpractice claims, but they do not challenge the summary judgment on their misrepresentation and fraud claims.

## WAIVER

As a preliminary matter, appellee asserts this court should consider plaintiffs' response to his motion for summary judgment as waived because the response relies on a voluminous record, with only a single citation to the record. On appeal, plaintiffs assert nothing is waived because the judge stated, at the new trial hearing, that he considered the expert depositions.

Plaintiffs responded to appellee's first motion for summary judgment and attached their summary judgment evidence, which comprises 1,136 pages (six volumes of the clerk's record). However, the response itself cites to only one portion of the mother's deposition in which she testifies about the baby's condition when he was brought to the emergency room. The response then states that the summary judgment proof consists of fourteen exhibits, consisting of entire depositions and affidavits. Except for the pages in the mother's deposition, not a single page in any exhibit is cited in the response. At the summary judgment hearing, it appears plaintiffs' counsel presented the trial court with a notebook containing all relevant pleadings and he told the court he tagged and highlighted the relevant portions of plaintiffs' summary judgment evidence. Unfortunately, nothing is tagged or highlighted in our record on appeal.

In determining whether a summary judgment respondent successfully carried its burden, neither this court nor the trial court is required to wade through a voluminous record to marshal respondent's proof. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex.1989); *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex.App.-San Antonio 2003, no pet.). Thus, when presenting summary-judgment proof, a party must specifically identify the supporting proof on file that it seeks to have considered by the trial court. *See Boeker v. Syptak*, 916 S.W.2d 59, 61 (Tex.App.-Houston [1st Dist.] 1996, no writ). Attaching entire documents and depositions to a motion for summary judgment or to a response and referencing them only generally does not relieve the party of pointing out to the trial

court where in the documents the issues set forth in the motion or response are raised. *See Guthrie v. Suiter,* 934 S.W.2d 820, 826 (Tex.App.-Houston [1st Dist.] 1996, no writ). Also, this court "is not free to search the entire record, including materials not cited to or relied on by the trial court." *Blake,* 123 S.W.3d at 525. An appellant has a duty to show that the record supports its contention. *Id.*

 Because plaintiffs' response did not direct the trial court to any specific portion of their summary judgment evidence, plaintiffs failed to raise a fact issue sufficient to defeat appellee's no-evidence motion for summary judgment. Therefore, the trial court did not err in rendering summary judgment in favor of appellee. Nevertheless, in the interest of justice, we have reviewed those portions of the record cited to us on appeal.[1] Because we conclude plaintiffs did not bring forth more than a scintilla of probative evidence that raises a genuine issue of material fact on the issue of causation, and because that issue is dispositive, we address only that element of plaintiffs' claim. *See* Tex.R.App. P. 47.1.

## CAUSATION

 In his motion for summary judgment, appellee argued there was no evidence on causation. Specifically, appellee asserted any alleged delay in treatment did not cause Samuel's death because no expert could say whether an earlier administration of antibiotics would have prevented the child's death. Appellee argued that plaintiffs failed to produce evidence that Samuel's chance for survival at the time of the alleged malpractice was fifty-one percent or higher.

 "In a medical malpractice case, plaintiffs are required to show evidence of a 'reasonable medical probability' or 'reasonable probability' that their injuries were proximately caused by the negligence of one or more defendants." *Park Place Hosp. v. Milo,* 909 S.W.2d 508, 511 (Tex. 1995); *see also Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 400 (Tex. 1993). The ultimate standard of proof on the causation issue "is whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *Kramer,* 858 S.W.2d at 400. "Hence, where pre-existing illnesses or injuries have made a patient's chance of avoiding the ultimate harm improbable even before the allegedly negligent conduct occurs—*i.e.,* the patient would die or suffer impairment anyway—the application of traditional causation principles will totally bar recovery, even if such negligence has deprived the patient of a *chance* of avoiding the harm." *Id.* (emphasis in original). Thus, recovery is barred when the defendant's negligence deprived the patient of only a fifty percent or less chance of survival. *Park Place Hosp.,* 909 S.W.2d at 511; *Kramer,* 858 S.W.2d at 400; *see also Helm v. Swan,* 61 S.W.3d 493, 497 (Tex.App.-San Antonio 2001 pet. denied). Accordingly, here, the "dispositive issue as to the claims against [appellee] is whether [Samuel] could have survived if" he had been given antibiotics within thirty minutes of his arrival at the ER. *See Park Place Hosp.,* 909 S.W.2d at 511.

---

1. Our opinion should not be construed as standing for the proposition that a party may refer the trial court only generally to its summary judgment evidence, but, on appeal, provide an appellate court with more specific page citations to the summary judgment evidence. We will not consider evidence that the trial court itself did not consider. In this case, however, the reporter's record from the new trial hearing indicates the trial court considered the testimony of one or more of the plaintiffs' experts.

Plaintiffs contend the testimony of their experts, Drs. Montemayor, Rogers, and Hernandez raised a fact issue on causation. We disagree. Dr. Montemayor stated only that Samuel's chances "would be better" if antibiotics had been administered in the emergency room at 9:00 a.m. However, when asked if he could place Samuel's chances of survival at more than fifty percent, Dr. Montemayor responded, "I think it would be hard to pin that number down, percentage, what have you." Dr. Rogers agreed that "there's a reasonable expectation this baby could have survived if treated earl[ier]." However, when asked if he could place Samuel's chances of survival at more than fifty percent, Dr. Rogers responded, "That would be hard to say not knowing the condition of the baby early on."

 In his affidavit, Dr. Hernandez stated, "based on a reasonable degree of medical probability, the breach of the standard of care by Doctor's Hospital's nursing staff and medical staff deprived Samuel ... of a 51% or more chance of survival. In other words, had Samuel ... been given antibiotics, been placed in a warmer, provided IV fluids and oxygen within 30 minutes of his arrival at Doctors Hospital Emergency Room Department he would have had a 51% or more chance of surviving." Although Dr. Hernandez testified to Samuel's chance of survival, we conclude his testimony is merely speculative and conclusory as to the actual cause of Samuel's death.[2] Dr. Hernandez could not identify any literature upon which his empirical experience was based. When asked if he had reviewed any medical research or studies dealing with the effects of a delay in administering antibiotics on neonates with GBS sepsis, he answered, "It's unethical. Whose kid are you going to sacrifice to prove your point?" We conclude that Dr. Hernandez's testimony reveals that his opinion relies on mere possibility, speculation, and surmise. *See Schaefer v. Texas Employers' Ins.*, 612 S.W.2d 199, 204 (Tex. 1980). Therefore, his testimony amounts to no evidence of causation. Because plaintiffs failed to produce any evidence on the issue of causation, the trial court did not err in rendering summary judgment in favor of appellee.

### CONCLUSION

We affirm the trial court's judgment.

---

2. Before the trial court, appellee raised several objections to Dr. Hernandez's testimony, including that he was biased because he was Samuel's uncle and that his testimony was speculative. However, appellee failed to obtain a ruling on his objections to plaintiffs' summary judgment evidence. Nevertheless, because an objection to the speculative nature of an expert's opinion may be raised for the first time on appeal, *see Coastal Transp. Co. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex.2004), we address only that specific complaint on appeal.