*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

## MEMORANDUM OPINION

No. 04-07-00757-CV

**IN RE THE ESTATE OF** Gert L. **RABKE**, Deceased

From Probate Court No. 1, Bexar County, Texas
Trial Court No. 2005-PC-2895
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:    January 28, 2009

AFFIRMED

After Gert L. Rabke passed away in 2005, Paul von Beck-Lutes contested her will, claiming he was Rabke's common law husband, or alternatively, that Rabke made a nuncupative will while on her deathbed. The trial court granted a No Evidence Motion for Partial Summary Judgment on both issues. Beck-Lutes's claims were severed, and he appeals the trial court's orders.

### FACTUAL AND PROCEDURAL HISTORY

When Rabke passed away in 2005, her only daughter, Gabriele Arning, filed an application to probate the will her mother had executed about ten years earlier, which named Arning as both primary beneficiary and independent executor of her mother's estate. Beck-Lutes filed pleadings

contesting Arning's application, claiming he was Rabke's common law husband during the last several years of her life. Beck-Lutes alleged the will Arning offered for probate had been revoked, and Rabke either died intestate leaving him a right to her inheritance as her surviving spouse, or alternatively, that Rabke made a nuncupative will naming Beck-Lutes as a beneficiary. The trial court appointed a temporary administrator of Rabke's estate. Arning filed a No Evidence Motion for Partial Summary Judgment on the issue of Beck-Lutes's standing to contest the will, which was granted by the trial court. In addition, the trial court entered sanctions against Beck-Lutes in the form of a deemed finding that he was not Rabke's common law spouse, and it prohibited Beck-Lutes from offering further support to his claim that he was ever Rabke's spouse. The trial court severed Beck-Lutes's claims, and he filed a notice of appeal.

Beck-Lutes challenges the trial court's order in six issues, contending: (1) he is entitled to a new trial pursuant to Texas Rule of Appellate Procedure 34.6(b); (2) the trial court erred in granting the No Evidence Partial Motion for Summary Judgment because Beck-Lutes presented more than a scintilla of evidence that he was Rabke's common law spouse; (3) the trial court erred in granting the No Evidence Partial Motion for Summary Judgment on the nuncupative (oral) will because there was inadequate time for discovery; (4) the trial court abused its discretion in granting discovery sanctions against Beck-Lutes; (5) the trial court abused its discretion in denying Beck-Lutes a jury trial; and (6) the trial court acted without jurisdiction in granting discovery sanctions after granting the motion for summary judgment. We affirm the trial court's order.

## NEW TRIAL

Beck-Lutes argues that he is entitled to a new trial under Texas Rule of Appellate Procedure 34.6(f), which provides that an appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

TEX. R. APP. P. 34.6(f). An appellant fails to satisfy Rule 34.6(f) when he fails to show that the missing portion of the record is necessary to his appeal. *See Landry's Seafood House-Addison, Inc. v. Snadon*, 233 S.W.3d 430, 437 (Tex. App.—Dallas 2007, pet. denied); *Gavrel v. Rodriguez*, 225 S.W.3d 758, 761 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Beck-Lutes argues that he should be afforded a new trial due to a missing portion of the record from a December 2005 hearing. Beck-Lutes contends that during this hearing, all parties referred to him as Rabke's husband, and the court took judicial notice of the fact that he was Rabke's husband. After entering several requests for a transcript of the hearing, the court reporter filed a statement with the court indicating that although a record was taken, she was unable to produce the transcript. The court reporter stated that she took an electronic, paperless record of the transcript which was transferred to a defective disc. Although the court reporter attempted to use a recovery program, she was unable to recover the information. Beck-Lutes argues that the record of the trial court taking judicial notice of his common law marriage nullifies the no evidence summary judgment against him.

Rule 201(b) of the Texas Rules of Evidence states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b). This rule applies only to adjudicative facts, which are facts pertaining to a particular case. *See O'Connell v. State*, 17 S.W.3d 746, 749 (Tex. App.—Austin 2000, no pet.). Before a fact can be judicially noticed, it must be verifiably certain and relatively undisputable. *See Havins v. First Nat. Bank of Paducah*, 919 S.W.2d 177, 184 (Tex. App.—Amarillo 1996, no writ).

The record does not support Beck-Lutes's claim that the trial court took judicial notice of his alleged common law marriage. First, whether Beck-Lutes was Rabke's common law husband was a fact issue in dispute throughout the proceedings. Courts take judicial notice only of adjudicative facts that are not subject to reasonable dispute. *See* TEX. R. EVID. 201(b). In this case, just five months after the December 2005 hearing, Beck-Lutes filed a Motion to Establish Common Law Marriage, seeking a court finding that he was in fact Rabke's common law husband. If the court had taken judicial notice of this fact in December, there would have been no need for Beck-Lutes to file such a motion or request a hearing. His actions following the December 2005 hearing indicate the issue of the common law marriage had not been settled, and in fact continued until the court issued the No Evidence Partial Summary Judgment, finding that Beck-Lutes was not Rabke's common law spouse, and prohibiting him from offering further support to his claim that he was ever Rabke's spouse. Finally, while the transcript may have included other parties referring to the couple as married, this is not evidence that the trial court made such a determination. Consequently, Beck-

Lutes has failed to prove the reporter's lost record is necessary to this appeal's resolution, and his first issue is overruled.

### COMMON LAW MARRIAGE CLAIM

In his second issue, Beck-Lutes claims the trial court erred in granting Arning's No Evidence Motion for Partial Summary Judgment, finding that Beck-Lutes was not Rabke's common law spouse. Beck-Lutes first argues that he was not properly served with notice of the summary judgment hearing. Rule 21a of the Texas Rules of Civil Procedure states:

> Every notice required by these rules, and every pleading, plea, motion, or other form of request required to be served under Rule 21 . . . may be served by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record, as the case may be, either in person or by agent or by courier receipted delivery or by certified or registered mail, to the party's last known address . . . . Service by mail shall be complete upon deposit of the paper, enclosed in a postpaid, properly addressed wrapper, in a post office or official depository under the care and custody of the United States Postal Service . . . . Nothing herein shall preclude any party from offering proof that the notice or instrument was not received, or, if service was by mail, that it was not received within three days from the date of deposit in a post office or official depository under the care and custody of the United States Postal Service, and upon so finding, the court may extend the time for taking the action required of such party or grant such other relief as it deems just.

TEX. R. CIV. P. 21a. Even when a party does not receive actual notice, "constructive notice" may be established if the serving party has complied with the requirements of Rule 21a, and presents evidence that the intended recipient engaged in behaviors such as selective acceptance or refusal of certified mail relating to the case, or that the intended recipient refused all deliveries of certified mail. *See Etheredge v. Hidden Valley Airpark Ass'n, Inc.*, 169 S.W.3d 378, 382 (Tex. App.—Fort Worth 2005, pet. denied)*; Roberts v. Roberts,* 133 S.W.3d 661, 663 (Tex. App.—Corpus Christi 2003, no pet.).

Beck-Lutes contends Arning and the trial court knew he was not home and was not receiving notices of the trial court's hearings, pointing to the fact that the trial court had the San Antonio Police Department conduct three welfare checks on Beck-Lutes. He contends he was on vacation during the time most of the notices were served, and that because he did not sign for the certified mail and his signature is not on file, he was not served. While the trial court did order the welfare checks out of concern for Beck-Lutes's health, the record shows that one of Beck-Lutes's neighbors reported he was returning from vacation August 21—before the notices for the summary judgment hearing were mailed to him—and another neighbor reported she saw Beck-Lutes outside his home a few days later.

The record shows Beck-Lutes was mailed certified notices of the summary judgment hearing on three separate occasions; in addition, he refused to claim certified mailings from Arning's attorneys and the temporary administrator of Rabke's estate. In fact, Arning presented the trial court with evidence that no less than ten items were sent by certified mail to Beck-Lutes, and none were claimed. Over the course of two months, the post office left 20 notices in Beck-Lutes's mailbox. During this same period, Beck-Lutes, who was representing himself *pro se*, continued to send notices and motions of his own. The trial court ruled this evidence showed Beck-Lutes received proper service. We agree.

In the alternative, Beck-Lutes argues that regardless of the notice issue, the court erred in granting summary judgment because the record contained more than a scintilla of evidence he was Rabke's common law spouse. A trial court must grant a proper no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element of the claim. TEX. R. CIV. P. 166a(i). Beck-

Lutes relies on the fact that the record included a transcript from a hearing in 2005 in which Rabke's stepdaughter testified that the couple agreed to be married, held themselves out as married, and lived together in San Antonio. *See* TEX. FAM. CODE ANN. § 2.401(a)(2) (Vernon 2006) (outlining elements of a common law marriage in Texas). He also points to a Durable Power of Attorney document in which Rabke reportedly identifies Beck-Lutes as her husband.

In light of our determination that service was proper, Beck-Lutes failed to file a timely response to the No Evidence Motion for Summary Judgment. Pursuant to Texas Rule of Civil Procedure 166a(c), Beck-Lutes had until September 27, 2007, seven days before the hearing on the motions for summary judgment, to file either a response to the summary judgment motion or a motion for leave to file the response after the due date. TEX. R. CIV. P. 166a(c); *see Landers v. State Farm Lloyds*, 257 S.W.3d 740, 745 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Rule 166a(c) provides in pertinent part that, "except on leave of court, the adverse party, not later than seven days prior to the date of the hearing may file and serve opposing affidavits or other written responses." *Id.* Beck-Lutes's response to the motion for summary judgment was untimely filed on October 2, 2007, the day before the summary judgment hearing.

Even if Beck-Lutes had filed a timely response, in determining whether a summary judgment respondent successfully carried its burden, the trial court is not required to wade through a voluminous record to marshal the respondent's proof. *See Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 81 (Tex. 1989); *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App.—San Antonio 2006, no pet.). Thus, when presenting summary judgment proof, a party must specifically identify the supporting proof on file that it seeks to have considered by the trial court. *See Arredondo*, 198 S.W.3d at 238. By failing to file a timely response to the summary judgment

motion, Beck-Lutes necessarily failed to identify for the trial court the hearing transcript or durable power of attorney document he now wants us to consider as evidence of the trial court's error in granting the summary judgment motion.

Finally, Beck-Lutes argues the summary judgment was improper because there had not been sufficient time for discovery. We cannot say the trial court erred in proceeding to rule on the motion for summary judgment. Beck-Lutes did not ask for additional time to conduct discovery. More importantly, the case had been on file for nearly two years, a factor the court could consider.

Based on the above, Beck-Lutes's second issue is overruled.

### NUNCUPATIVE WILL

In his third issue, Beck-Lutes argues the trial court erred in granting the No Evidence Motion for Partial Summary Judgment on the nuncupative will because there was inadequate time for discovery. Beck-Lutes made his initial claim regarding the existence of a nuncupative will on August 30, 2007. Arning filed a No Evidence Motion for Partial Summary Judgment on both the common law marriage and the nuncupative will on September 7, 2007. Beck-Lutes argues that six days was inadequate for discovery on the issue of the nuncupative will. However, "[w]hen a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enterprise Products Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (*citing* TEX. R. CIV. P. 166a(g), 251, 252). Beck-Lutes failed to do either, and consequently waived this issue for appeal. *See id.* Beck-Lutes's third issue is overruled.

## DISCOVERY SANCTIONS

In his fourth issue, Beck-Lutes argues the trial court abused its discretion granting discovery sanctions against Beck-Lutes. In determining whether sanctions are appropriate, we consider whether a direct relationship existed between the offensive conduct and the sanction imposed, and whether the sanctions were excessive. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). "[A] sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators." *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (*citing TransAmerican*, 811 S.W.2d at 917; *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992)).

On June 4, 2007, Arning served Beck-Lutes a set of ten interrogatories and twenty-five document requests. Pursuant to the Texas Rules of Civil Procedure, Beck-Lutes had thirty-three days to submit responses to Arning. TEX. R. CIV. PROC. 197.2(a), 196.2(a). Beck Lutes missed the July 9 deadline. On June 29, Beck-Lutes's attorney was replaced by a different attorney; on July 2, the new attorney filed a Motion for Continuance and Entry of Scheduling Order. The motion was heard and granted, and a written order was signed July 20. On that same day, Beck-Lutes's new attorney withdrew from the case; from that point forward, he represented himself *pro se*.

In the order signed July 20, the trial court extended Beck-Lutes's discovery deadline, giving him until August 3, 2007 to respond to Arning's earlier discovery request. Beck-Lutes did not comply with the trial court's order. On August 31, Arning filed and served a motion for sanctions against Beck-Lutes for discovery abuse; the motion included a notice setting the motion for hearing on October 3, 2007. On October 3, in addition to granting Arning's motion for summary judgment

against Beck-Lutes, the trial court also granted a motion for discovery sanctions against him based on his refusal to respond to Arning's discovery requests.

Beck-Lutes argues that the discovery sanctions were unjustified because he had no notice that any discovery responses were ever due, as he did not receive notice of Arning's discovery motions or the discovery orders in July, August, and September leading up to the entry of the October 3 sanctions order. However, the same reasoning utilized in our discussion of issue two applies here. Arning produced evidence that notice of the discovery motions was sent to Beck-Lutes in compliance with Rule 21a of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 21a. Although Beck-Lutes claims he did not receive notice because he never accepted the documents, certified notices were sent to his permanent address. Even if he did not receive actual notice, constructive notice was established by Arning's compliance with Rule 21a and evidence showing that Beck-Lutes appeared to participate in selective acceptance of case documents. *See Etheredge v. Hidden Valley Airpark Ass'n, Inc.*, 169 S.W.3d 378, 382 (Tex. App.—Fort Worth 2005, pet. denied)*; Roberts v. Roberts,* 133 S.W.3d 661, 663 (Tex. App.—Corpus Christi 2003, no pet.).

The sanctions imposed on Beck-Lutes, namely the finding that he was never the common law spouse of Rabke and could no longer make any claims to that effect, directly related to his offensive conduct: failing to supply discovery responses to Arning on that very issue. *See TransAmerican*, 811 S.W.2d at 917 (requiring a direct relationship between the offensive conduct and the sanction imposed). Considering the length of time the case had been on the docket, as well as the many notices sent to Beck-Lutes and the numerous opportunities given to him to appear before the court and argue his case, the sanctions imposed were not excessive. *See id.* (holding that in order to be

just, discovery sanctions cannot be excessive). Consequently, we conclude the discovery sanctions imposed were just and appropriate. Beck-Lutes's fourth issue is overruled.

### JURY TRIAL

In his fifth issue, Beck-Lutes argues the trial court abused its discretion in denying him a properly demanded jury trial. The summary judgment process provides a method of terminating a case when only questions of law are involved and there are no genuine issues of fact. *See Bliss v. NRG Industries*, 162 S.W.3d 434, 437 (Tex. App.—Dallas 2005, pet. denied). While the summary judgment process does not deprive parties of a jury trial where material questions of fact exist, if there is nothing to submit to a jury, then the grant of summary judgment does not violate a party's constitutional right to a jury trial. *See id. See also Lattrell v. Chrysler Corp.*, 79 S.W.3d 141, 150 (Tex. App.—Texarkana 2002, pet. denied). Because we conclude the trial court properly granted summary judgment determining Beck-Lutes was not Rabke's common law spouse, there was no genuine issue of material fact concerning Beck-Lutes's claim he was Rabke's husband.

Beck-Lutes argues that he is also entitled to a jury trial because a "defaulting" defendant in a family law matter is still entitled to rely on a jury demand and have a jury trial on any fact questions related to the family law issue when the jury demand is not struck. This argument is premised on the holding in *In re A.S.*, 241 S.W.3d 661, 665-66 (Tex. App.—Texarkana 2007, no pet.) (holding the effect of default in a custody modification proceeding is different from other defaults in that allegations in the motion to modify may not be taken as confessed for want of an answer, and even on default the movant must prove up the required allegations of the motion to modify). However, the ruling of the trial court in *In re A.S.* was specifically directed at cases involving modification of the parent-child relationship, as outlined in section 105.002 of the Family

Code. *See id*; TEX. FAM. CODE ANN. § 105.002(c)(1) (Vernon Supp. 2008). This ruling does not apply to cases involving establishment of a common law marriage. Consequently, Beck-Lutes had no right to a jury trial following the trial court's summary judgment decision, and his fifth issue is overruled.

### JURISDICTION TO GRANT SANCTIONS

In his sixth issue, Beck-Lutes argues the trial court acted without jurisdiction in granting discovery sanctions after granting the Motion for Partial Summary Judgment. Beck-Lutes contends the case finalized upon the trial court granting the summary judgment against him, and therefore, the court lost jurisdiction to take further action against him. *See Bazan v. Canales*, 200 S.W.3d 844, 848 (Tex. App.—Corpus Christi 2006, no pet.) (stating that once a final judgment is rendered, the court loses jurisdiction to grant additional relief). However, a summary judgment that fails to dispose expressly of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court. *See Sada De Ayala v. Merrill Lynch and Co., Inc.*, No. 04-01-00615-CV, 2002 WL 598460, *1 (Tex. App.—San Antonio April 17, 2002, no pet.). The sanctions order and the partial summary judgment order were signed contemporaneously, and both orders remained interlocutory until the Order of Severance was signed on October 22, 2007. Consequently, the court had jurisdiction when it signed the sanctions order against Beck-Lutes. His sixth issue is overruled.

### DAMAGES FOR FRIVOLOUS APPEAL

Arning filed a "Motion Seeking Damages for Appellant's Frivolous Appeal," alleging that Beck-Lutes's appeal was so lacking in merit that it must be deemed frivolous. Appellate courts have the discretion to award damages for frivolous appeals. TEX. R. APP. P. 45. "[W]e exercise [this

discretion] with prudence and caution, and only after careful deliberation," and we impose sanctions "only in circumstances that are truly egregious. *In re Estate of Mask*, No. 04-07-00667-CV, 2008 WL 4595027, \*17 (Tex. App.—San Antonio Oct. 15, 2008, no pet. h.) (*citing Chapman v. Hootman,* 999 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1999, no pet). Beck-Lutes has made a good-faith challenge to the trial court's judgment. *See id.* We decline to award sanctions under these circumstances. Arning's motion for sanctions is denied.

## CONCLUSION

Beck-Lutes failed to prove he was entitled to a new trial pursuant to Rule 34.6(b) of the Texas Rules of Appellate Procedure. In addition, the trial court did not err in granting the No Evidence Motion for Partial Summary Judgment on the common law marriage claim and the nuncupative will claim, nor did the trial court abuse its discretion in granting discovery sanctions against Beck-Lutes or in denying Beck-Lutes a jury trial. Finally, the trial court acted within its jurisdiction in granting discovery sanctions contemporaneously with granting the No Evidence Motion for Partial Summary Judgment. Accordingly, the trial court's judgment is affirmed.

Catherine Stone, Chief Justice