**Opinion issued January 24, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00276-CV

———————————

## CHRISTOPHER A. PYLE, Appellant

## V.

## GREGORY J. HEBRANK AND MARY ANN P. HEBRANK, Appellees

On Appeal from the 189th District Court
Harris County, Texas
Trial Court Case No. 2011-68533

## MEMORANDUM OPINION

Christopher A. Pyle sued Gregory J. Hebrank and Mary Ann P. Hebrank for interference with his possessory right to his daughter. The trial court granted

summary judgment in favor the Hebranks. Pyle identifies seven issues on appeal challenging the summary judgment.

We affirm.

**Background Summary**

On November 11, 2011, Christopher Pyle filed suit against Gregory Hebrank and Mary Ann Hebrank for various causes of action emanating from the fact that the Hebranks had permitted Pyle's daughter, N.P., to live in their Houston home from July 14, 2011 until November 6, 2011. N.P. was born on July 24, 1994; thus, N.P. turned 17 years old 10 days after going to live with the Hebranks.

Prior to the time she lived with the Hebranks, N.P. had been staying with her mother, Melissa Thompson, in Boulder, Colorado. Thompson and Pyle had joint managing conservatorship of N.P. with Pyle having the exclusive right to establish N.P.'s primary residence. During the 2010–2011 school year, N.P. had lived with her father in Houston where she had attended high school. N.P. went to stay with her mother in Colorado on June 11, 2011. Pyle had told N.P. that he planned to move from Houston. N.P., however, wanted to complete her high school education in Houston.

N.P. and Thompson asked Gregory and Mary Ann Hebrank if N.P. could stay in their Houston area home until Thompson could obtain a job transfer there. The Hebranks knew N.P. because their son and N.P. were friends from high

school. Pyle objected to the proposal of N.P.'s living with the Hebranks. Nonetheless, the Hebranks agreed, and N.P. went to stay at their home on July 14, 2011.

On July 20, 2011, Pyle requested that Thompson return N.P. to his custody. Correspondence in the record indicates that Pyle had been agreeable to N.P. living with Thompson in Colorado for the upcoming school year. He indicated that he had changed his mind about the arrangement because he did not want N.P. to live with the Hebranks. At the time of the request, Pyle believed that N.P. was still living in Colorado, although she had been staying with the Hebranks since July 14, 2011. On July 24, 2011, Thompson responded to Pyle stating that she would return 17-year-old N.P. to Houston.

Shortly thereafter, Thompson filed suit in Fort Bend County District Court to modify the terms of that court's 2007 order, which had named Thompson and Pyle as joint managing conservators, and had given Pyle the right to establish N.P.'s primary residence. On August 12, 2011, the Fort Bend County district court signed temporary orders, which, inter alia, gave Thompson the right to establish N.P.'s primary residence. N.P. continued to live in Houston with the Hebranks. On August 23, 2011, Thompson signed a power of attorney granting the Hebranks the authority to make educational and medical decisions for N.P. At the end of

August, N.P. started her junior year of high school in Houston, while residing at the Hebranks' home.

On October 19, 2011, the Fort Bend County district court signed an order granting Thompson's nonsuit of the modification action. At the end of October 2011, Pyle learned that N.P. was going to school in Houston and living with the Hebranks. In an email to Gregory Hebrank, Pyle requested the Hebranks to send N.P. to stay with a person he identified as "Jennifer" in Sugar Land, Texas. Pyle indicated that he would not be in Houston until November. N.P. did not go to Sugar Land but instead went back to her mother in Boulder, Colorado on November 6, 2011.

Appearing pro se, Pyle filed the instant suit against the Hebranks on November 11, 2011. In the suit, Pyle alleged that the Hebranks had interfered with his possessory rights to N.P. and asserted a number of common law causes of action. The Hebranks filed special exceptions to Pyle's original petition, which the trial court granted.

Pyle filed his "Second Amended Original Petition" on January 12, 2012. In the petition, Pyle identified eight causes of action. Several of the causes of action were slight variations of Pyle's claim that the Hebranks had interfered with his parental and possessory rights with respect to N.P. In the petition, Pyle referred to such causes of action as "tortious interference with parental rights," "custodial

4

interference," "alienation of affections," and "reckless endangerment of a child seized unlawfully from the custodial parent." Pyle also asserted claims for fraud, intentional infliction of emotional distress, abuse of process, invasion of privacy, and conspiracy.

Pyle described his damages as follows:

As a direct and proximate result of [the Hebranks' actions], Pyle suffered and continues to suffer the complete loss of the special familial relationship he had shared with his young daughter; loss of irreplaceable time he was morally and legally deserving of enjoying with his daughter, loss of his daughter, loss of his family, loss of reputation, familial disgrace, loss of future familial relationship with his daughter, and loss of liberty and happiness. Mr. Pyle has also suffered and continues to suffer extreme long term duress, severe emotional distress, prolonged mental anguish, mental depression, deep sadness, humiliation, interruption of his life and life's plans, deprivation of his daughter's love and affection, constant parental worry, loss of health, loss of optimism, loss of ability to focus on his work, loss of familial and personal opportunities, and damage to his general physical health and well being and loss of time and money.

Pyle requested damages "in a sum of $500,000" and "exemplary and punitive damages" against the Hebranks.

The Hebranks moved for summary judgment on both traditional and no-evidence grounds. The trial court granted summary judgment without specifying the grounds, and Pyle filed this appeal. In his pro se brief, Pyle identifies seven issues challenging the trial court's take-nothing summary judgment against him.

5

## Summary Judgment

In his first two issues, Pyle generally avers that the trial court erred by granting summary judgment on his claims.

On appeal, we review de novo a trial court's summary judgment ruling. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In our review, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). When, as here, the trial court's order granting summary judgment does not specify the grounds on which it was granted, it must be affirmed if any of the grounds asserted are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

Although Pyle raises a number of issues challenging summary judgment, the rules of appellate procedure require that an appellate court's opinions must be as brief as practicable while addressing "every issue raised and necessary to final disposition of the appeal." Tex. R. App. P. 47.1. In addition, when both traditional and no-evidence grounds for summary judgment have been raised, it is generally most efficient to begin by determining whether the respondent produced sufficient evidence to defeat the no-evidence summary judgment. *Haase v. Pearl River*

6

*Polymers, Inc.*, 2012 WL 3229007, at *4 (Tex. App.—Houston [14th Dist.] Aug. 9, 2012, no pet.) (mem. op.) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). Thus, we begin by addressing one of the no-evidence grounds raised by the Hebranks that is sufficient to sustain the judgment as to all of Pyle's claims: the Hebranks' assertion in their motion for summary judgment that there is no competent summary-judgment evidence to show a causal connection between their alleged conduct and the damages alleged by Pyle.[1]

---

[1] Causation of damages is an element of each of Pyle's claims. *See, e.g.,* TEX. FAM. CODE ANN. § 42.006 (a)(2) (Vernon 2008) (interference with possessory right to a child); *Lozano v. Lozano*, No. 14-96-01555-CV, 2003 WL 22076661, at *2–3 (Tex. App.—Houston [14th Dist.] Sept. 9, 2003, no pet.) (mem. op.) (interference with possessory right to a child); *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) (intentional infliction of emotional distress); *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (fraud); *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (abuse of process). Pyle characterizes his first listed cause of action as false light invasion of privacy. We note that false light invasion of privacy is not a recognized cause of action in Texas. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 579 (Tex. 1994). To the extent that Pyle is claiming invasion of privacy by intrusion on seclusion, causation is an element of such claim. *See Clayton v. Wisener*, 190 S.W.3d 685, 697 (Tex. App.—Tyler 2005, pet. denied). Additionally, in his Second Amended Original Petition, Pyle claims, in his first-listed cause of action, that the Hebranks invaded his privacy by interfering with his parental right to raise his daughter and to enjoy his relationship with her. In this respect, as pled, Pyle's first cause of action is a near duplicate of his fifth listed cause of action: interference with possessory rights, which Pyle identifies as his "central claim." Similarly, Pyle's claims for "reckless endangerment of a child" and "alienation of [N.P.'s] affection," are subsumed in his interference with possessory rights claim. *See, e.g., Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986) (explaining, in interference with possessory rights case, that "the real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort, companionship and society"). Lastly, conspiracy is a derivative tort; that is, a defendant's liability for conspiracy is dependent on his participation in an underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Preston Gate,*

## A. Standard of Review: No–Evidence Motion for Summary Judgment

After an adequate time for discovery, the party without the burden of proof may move for a no-evidence summary judgment on the basis that there is no evidence to support an essential element of the non-moving party's claim.[2] TEX. R. CIV. P. 166a(i); *see Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). Summary judgment must be granted unless the non-movant produces competent summary judgment evidence raising a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426.

## B. Analysis

In his briefing, Pyle does not direct this Court to any competent summary judgment evidence that he produced in the trial to raise a genuine issue of material

---

*LP v. Bukaty*, 248 S.W.3d 892, 898 (Tex. App.—Dallas 2008, no pet.). Thus, if summary judgment is proper on the underlying tort claim, then it is proper on the associated conspiracy claim. *See id.*; *see also Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930–31 (Tex. 2010).

[2] Pursuant to Rule of Civil Procedure 166a(i), a party may not move for a no-evidence summary judgment until after an adequate time for discovery has passed. TEX. R. CIV. P. 166a(i). Pyle asserts that the trial court erred in granting summary judgment because the Hebranks' moved for summary judgment before an adequate time for discovery had passed. To preserve a complaint that the trial court's decision on a summary judgment motion was premature, the party claiming it did not have adequate time for discovery must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *See Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex .1996). Pyle does not show that he did either. Accordingly, Pyle failed to preserve any alleged error on this point. *See Guerrero v. Mem'l Turkey Creek, Ltd.*, No. 01–09–00237–CV, 2011 WL 3820841, at *4 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.).

fact with respect to the challenged element of causation of damages. Instead, Pyle points to the portion of his Second Amended Original Petition in which he requests damages. It is well established that pleadings alone are not summary judgment evidence. *See Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *see also Bell v. AIC-Sunbelt Group, Inc.*, No. 03-06-00399-CV, 2008 WL 1765259, at *2 (Tex. App.—Austin Apr. 17, 2008, pet. denied) (explaining that pleadings are not summary judgment evidence in case in which plaintiff cited to "Damages" section of his original petition as evidence sufficient to raise genuine issue of material fact).

In the trial court, Pyle attached 13 exhibits to his response as summary-judgment evidence. We are not required to search through the record to determine what part of the summary judgment evidence, if any, relates to Pyle's damages claim. *See Roberts v. CareFlite*, No. 02–12–00105–CV, 2012 WL 4662962, at *5 (Tex. App.—Fort Worth Oct. 4, 2012, no pet.) (mem. op.); *see also Arredondo v. Rodriguez*, 198 S.W.3d 236, 238–39 (Tex. App.—San Antonio 2006, no pet.); *Hall v. Stephenson*, 919 S.W.2d 454, 466–67 (Tex. App.—Forth Worth 1996, writ denied).

Similarly, in the trial court, Pyle neither discussed nor identified the evidence, included with his response, which he contended showed a genuine issue of material fact regarding causation of damages. In determining whether a

9

respondent to a no-evidence motion for summary judgment has produced sufficient evidence to raise a genuine issue of material fact, trial courts are not required to search the record without guidance. *See Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 309 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also* TEX. R. CIV. P. 166a(i) & cmt. (requiring trial court to grant a no-evidence motion meeting the rule's requirements unless non-movant produces summary judgment evidence raising a genuine issue of material fact and stating that non-movant's response need not marshall its proof but should point out evidence that raises a fact issue on the challenged elements). Because his response did not discuss the evidence as it relates to the element of causation of damages or direct the trial court to any specific portion of his summary judgment evidence relating to causation of damages, Pyle failed to meet his burden to offer competent evidence to raise a fact issue sufficient to defeat the Hebranks' no-evidence motion for summary judgment.[3] *See Roberts*, 2012 WL 4662962, at *5; *Arredondo*, 198 S.W.3d at 239.

Accordingly, we overrule Pyle's first and second issues and hold that the trial court did not err by granting no-evidence summary judgment in favor of the

---

[3] Pyle complains that the Hebranks sought summary judgment on his claims asserted in his "First Amended Original Petition" rather than on his claims found in his "Second Amended Original Petition," which was the live pleading at the time the motions for summary judgment were filed and granted. As discussed, the Hebranks' no-evidence point with respect to causation applies to all causes of action pleaded in the Second Amended Original Petition. Moreover, the trial court's order granting summary judgment reflects that the court considered "the pleadings on file with the court."

10

Hebranks on all of Pyle's claims. We therefore need not consider whether the trial court erred by granting Pyle's traditional summary judgment motion or Pyle's remaining appellate issues. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.