**Affirmed in part, and Reverse and Remand in part and Opinion Filed August 8, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-00458-CV

**SUSAN CHATELAIN, Appellant**
**V.**
**GIDEON MATH & READING LLC, Appellee**

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-01628-2015**

## MEMORANDUM OPINION
Before Justices Bridges, Myers, and Brown
Opinion by Justice Bridges

Susan Chatelain appeals the trial court's summary judgment in favor of Gideon Math &

Reading LLC on Chatelain's claims under a licensing agreement. In a single issue, Chatelain

argues the trial court erred in holding there was not an enforceable agreement between her and

Gideon. We affirm the trial court's judgment in part, reverse in part, and remand for further

proceedings.

Chatelain operates a business providing educational instruction in math and reading in

McKinney, Texas. Gideon produces proprietary materials for use by its franchisees and

licensees in providing educational instruction. Prior to the formation of Gideon, the business

was a sole proprietorship. Gideon was formed on October 14, 2010 and, on June 13, 2011,

Gideon Learning, LLC was formed, and the research and development, publication, and sales of

Gideon's material was transferred to Gideon Learning. In the beginning, there were no agreements between Gideon and customers purchasing its materials for use in after-school learning centers. Prior to the formation of the Gideon entity, Gideon used a form agreement contract which provided parties would not copy material from Gideon's "Do Not Copy" list; would "pay $20,000 for new Gideon Center fee + materials for opening kit"; and would be available for three days of training in Dallas. In exchange, Gideon agreed to provide a current manual with the Do Not Copy list; send a Gideon representative to the center for training; provide three days' free training in Dallas and unlimited access by phone and email; give notice of changes to the curriculum and "give ability to re-order; and "Will not allow any new centers to open within ten minutes of your center."

As alleged in Chatelain's original petition, In January 2012, Gideon and Chatelain entered into a license agreement "for the purpose of granting to [Chatelain] the right to use Gideon Materials and display the Gideon Marks" at Chatelain's business. The agreement granted Chatelain "a non-exclusive, non-transferable, personal license" to use the Gideon materials and display the Gideon Marks at her place of business only. Gideon retained sole ownership of the materials and marks and Chatelain agreed she was "not entitled to copy, store electronically, print, or sell" the materials or marks except for certain specified materials listed in an exhibit. Chatelain further agreed to run her business "with adequate lighting, working and clean bathrooms, clean student workrooms, a clean waiting room, adequate and appropriate furniture, and in a safe manner." In return, Gideon agreed not to place another licensee "within a ten (10) minute driving time from your Location." Upon termination of the agreement, Chatelain agreed to stop using the marks and materials, immediately return the materials to Gideon or sell them to another licensee with Gideon's approval, and provide proof of any sale to Gideon.

Chatelain retained no right to the materials or marks upon termination of the agreement. Gideon did not charge Chatelain any fees in connection with the signing of the agreement.

In 2013, Gideon opened a learning center which Chatelain claimed was within ten minutes of her location. Gideon responded that the ten minute restriction "is determined by reference to Google maps at the time the new center is introduced." Chatelain took no further action. Chatelain's petition alleged that, in April 2015, Gideon was opening another new location within ten minutes from her location. Chatelain sought declaratory judgment as to the "rights, status, or other legal relations under the License Agreement between the parties." Chatelain also alleged claims for breach of contract, injunctive relief, and attorney's fees.

In December 2015, Gideon filed a motion for summary judgment seeking traditional summary judgment on the grounds that there was no genuine issue of material fact precluding judgment in favor of Gideon because the license agreement is a unilateral contract and unenforceable. Gideon also moved for no-evidence summary judgment on the ground that there was no evidence of an enforceable contract, no consideration for the license agreement, and no damages proximately caused by the alleged breach. Gideon argued further that, without an enforceable contract, Chatelain had no claims for declaratory judgment, injunction, or attorney's fees.

As the specific grounds for no-evidence summary judgment, Gideon alleged Chatelain was not able to show: (1) a valid, enforceable contract exists; (2) any contract is supported by consideration; (3) [Gideon] breached the agreement; (4) [Chatelain] suffered any damage; or (5) any breach by [Gideon] was the proximate cause of any injury sustained. Gideon alleged certain "undisputed summary judgment facts" including the assertion nothing was requested in return for the license agreement and a 10% discount was offered for those that would sign and return the license agreement. This assertion was supported by a letter attached to the motion indicating

–3–

that, in January 2012, Gideon was "moving into franchising all new centers" and requested that all current licensees sign the license agreement by January 31, 2012. In exchange, Gideon offered a 10% discount on online store purchases from the time the licensee signed the agreement until July 1, 2012.

In further support of its motion, Gideon asserted Chatelain did not pay anything of value to Gideon in exchange for the license agreement; Chatelain is free to terminate the license agreement at any time; Chatelain has no obligation to purchase any materials from Gideon under the license agreement; Chatelain did not have to change any aspect of the way she ran her business when she signed the license agreement; and Chatelain has no obligations under the license agreement that are not illusory because she can simply walk away from the relationship with Gideon without any cost or penalty. Based on these facts, Gideon asserted the license agreement is unilateral because Chatelain has no obligation that is not illusory.

Gideon also argued the license agreement is not supported by sufficient consideration because Chatelain paid nothing for the license, paid no royalties, and took on no obligations she did not already have under the license agreement. To the extent the license agreement contained a covenant not to compete, Gideon argued the license agreement did not meet the criteria required of an enforceable covenant not to compete. Regarding Gideon's use of Google maps to determine drive times, Gideon argued Chatelain had waived the issue by continuing her relationship with Gideon after learning in 2013 that Gideon used Google maps, and quasi-estoppel barred Chatelain from disputing the use of Google maps by accepting the use of Google maps in 2013. Finally, Gideon sought a declaratory judgment that the license agreement was not enforceable.

In January 2016, Chatelain filed a response to Gideon's motion for summary judgment arguing the licensing agreement was enforceable but, even if it were not, Gideon should be

estopped from denying the enforceability of its own agreement. Chatelain argued she "purchased her materials from [Gideon] and exhibited [Gideon's] sign or trademark to generate business." Gideon sold educational materials to Chatelain and did not argue that the licensing agreement was unenforceable when Chatelain complained about the proximity of a new center. Instead, Gideon argued that the new center was in compliance with the terms of the agreement. Chatelain argued the licensing agreement "confers upon [Chatelain] the right to use materials developed and sold by [Gideon] as long as [Chatelain] complies with various terms and conditions, none of which [Chatelain] has been accused of violating." As long as she abides by the terms of the license agreement and buys Gideon's materials, Chatelain argued, she has the right to operate under the Gideon name, a name which has value. In support of her response, Chatelain attached the deposition testimony of Stephanie Coppedge, Gideon's managing member, who testified she believes "there is some value to the name Gideon Math & Reading and the instructional system" it employs, and she had "25 or 26 other people who agree with [her] and use [her] system and buy [her] materials to tutor and instruct people."

In May 2016, the trial court signed a final judgment granting Gideon's motion for summary judgment and declaring "that the License Agreement attached hereto is not enforceable as a matter of law on the grounds that the agreement is unilateral and [Chatelain's] promises are illusory, and because it is not supported by sufficient consideration." This appeal followed.

In a single issue, Chatelain argues the trial court erred in holding there was not an enforceable agreement between her and Gideon. As a result, she argues, the trial court erred in granting summary judgment in favor of Gideon.

In reviewing the trial court's decision to grant summary judgment, we apply well-known standards. See TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). A defendant who moves for summary judgment must show the plaintiff has no

cause of action. A defendant may meet this burden by either disproving at least one essential element of each theory of recovery or conclusively proving all elements of an affirmative defense. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *See Kang v. Hyundai Corp.*, 992 S.W.2d 499, 501 (Tex. App.—Dallas 1999, no pet.).

When traditional and no-evidence motions for summary judgment are filed, we review the no-evidence summary judgment first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. See TEX. R. CIV. P. 166a(i); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *King Ranch*, 118 S.W.3d at 750. When analyzing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *See Nixon*, 690 S.W.2d at 549 (traditional summary judgment); *King Ranch*, 118 S.W.3d at 750 (no-evidence summary judgment).

A contract must be based upon a valid consideration, in other words, mutuality of obligation. *Iacono v. Lyons*, 16 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *see Texas Gas Util. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970). Consideration is a bargained-for exchange of promises. *ULICO Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 790 (Tex. 2008). Consideration consists of benefits and detriments to the contracting parties. *Id.*

The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments. *Id.*

Here, the summary judgment evidence showed Gideon essentially required all licensees, including Chatelain, to enter into the license agreement in 2012. As an incentive to sign the license agreement by a particular date, Gideon offered a discount on purchases from Gideon's online store. Under the license agreement, Chatelain could purchase educational materials from Gideon and use them within certain limitations, but the materials and Gideon's mark remained Gideon's property, and Chatelain was required to return all materials to Gideon if the license agreement was terminated. The agreement also required Chatelain to maintain her business in a certain way. In return, Gideon agreed not to place another licensee within a ten minute driving time from Chatelain's location. Gideon did not charge any fees in connection with the *signing* of the agreement, but the purpose of the agreement was to govern sales of Gideon's educational materials and use of Gideon's mark, which Gideon's managing member agreed had value. Under these circumstances, we conclude Chatelain produced more than a scintilla of probative evidence to raise a fact issue on the questions of whether a valid, enforceable contract existed between Gideon and Chatelain and whether the agreement was supported by consideration. *King Ranch*, 118 S.W.3d at 750. Because fact issues exist as to the agreement's validity and enforceability, we reject Gideon's argument that the agreement, to the extent it created a restraint on trade, was unenforceable because it was not ancillary to an otherwise enforceable contract.

Gideon argues the licensing agreement imposes on Chatelain no obligations that are not illusory because she can simply walk away from the relationship with Gideon without any cost or penalty. Even though a contract is terminable at will, until terminated, the contract is valid and subsisting. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989). Further, if Chatelain walks away from her relationship with Gideon, she must return Gideon's educational

materials and stop using Gideon's mark, both of which the evidence shows have value. We conclude fact issues preclude summary judgment on the issue of whether Chatelain's obligations under the agreement were illusory. *See King Ranch*, 118 S.W.3d at 750.

Chatelain sought a declaratory judgment regarding her "rights, status, or other legal relations" under the licensing agreement. Gideon argues Chatelain presented no evidence of damages. A declaratory judgment, by its nature, is forward looking; it is designed to resolve a controversy and prevent future damages. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 660 (Tex. 2009). It affects a party's behavior or alters the parties' legal relationship on a going-forward basis. *Id.* An action to declare rights is not an action for money damages. *Id.* We sustain Chatelain's issue to the extent she argues summary judgment was improper on her declaratory judgment and injunctive relief claims.

Gideon argues Chatelain "produced no evidence at all to prove the elements of an enforceable agreement supported by sufficient consideration, a breach, damages or proximate cause with respect to her breach of contract claim." Gideon's no-evidence motion for summary judgment asserted Chatelain presented no evidence that she suffered any damage or that any breach by Gideon was the proximate cause of any injury sustained. The elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Woodhaven Partners, Ltd. v. Shamoun & Norman*, L.L.P., 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.). Chatelain's petition alleged she had "suffered significant actual damages" and sought "compensatory damages" as a result of Gideon's alleged breach of contract. Chatelain's petition did not further address the damages issue. In her response to Gideon's motion for summary judgment, Chatelain presented no evidence to show what damages she incurred, if any, as a result of Gideon's alleged breach of

contract. When presenting summary judgment proof in response to a no-evidence motion, a party must specifically identify the supporting proof on file that it seeks to have considered by the trial court. *See Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App.—San Antonio 2006, no pet.); *see also* TEX. R. CIV. P. 166a(i) cmt. ("To defeat a motion made under paragraph (i), ... [a nonmovant's] response need only point out evidence that raises a fact issue on the challenged elements."). Accordingly, we conclude the trial court did not err in granting no-evidence summary judgment on Chatelain's breach of contract claim. *See King Ranch*, 118 S.W.3d at 750. We overrule Chatelain's issue to the extent she challenges the trial court's summary judgment on her breach of contract claim.

We affirm the trial court's summary judgment on Chatelain's breach of contract claim for failure to show evidence of damages. In all other respects, we reverse the trial court's judgment and remand for further proceedings.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

160458F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SUSAN CHATELAIN, Appellant

No. 05-16-00458-CV     V.

GIDEON MATH & READING LLC,
Appellee

On Appeal from the 417th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 417-01628-2015.
Opinion delivered by Justice Bridges.
Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's summary judgment on the declaratory judgment claim, the claim for injunctive relief, and the claim for attorney's fees by appellant Susan Chatelain. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered August 8, 2017.