**Pat CHAPMAN, Sr., Appellant,**

v.

**Timothy HOOTMAN, Appellee.**

No. 14–98–00817–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 29, 1999.

Lana R. Dieringer, Houston, for appellants.

Timothy A. Hootman, Dale W. Felton, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is a breach of contract case arising out of a fee dispute between an attorney and his client. Appellant Pat Chapman, Sr., the client, appeals from a summary judgment entered in favor of appellee Timothy Hootman, his former attorney. By cross-point, Hootman seeks sanctions against Chapman for filing a frivolous appeal.

### Factual Background

In 1991, Chapman hired Hootman to represent him in various legal matters. To memorialize the terms of their fee agreement, Chapman (client) and Hootman (attorney) entered into a contract entitled *Agreement for Professional Services,* which outlined the compensation to be paid to Hootman under various possible outcomes resulting from the pursuit and defense of claims asserted by and against Chapman. Chapman and Hootman later disagreed as to the sum owing to Hootman for the professional services rendered to Chapman, prompting Hootman to sue Chapman for breach of contract.

The written contingency fee agreement provided that Hootman, acting as Chapman's attorney, would seek to reduce or eliminate a major financial obligation of Chapman to the Federal Deposit Insurance Corporation ("FDIC"), successor to First State Bank of Liberty, Texas. In 1988, the bank had sold Chapman a piece of property in Hardin County, Texas, for which Chapman had given the bank a $356,000 promissory note. The following year the bank was declared insolvent and the note was sold to the FDIC. In October 1989, Eddie Boothe, a prior lien holder on the property, foreclosed and took title through a substitute trustee's deed. When Chapman discovered that he did not have good title to the property, he refused to pay his note to the FDIC. Multiple lawsuits followed. At the heart of Chapman's litigation with the FDIC and Boothe was the title to the Hardin County property and Chapman's purchase money indebtedness to the FDIC.

In anticipation of defending against the FDIC collection action and pursuing his own claims against both the FDIC and Boothe, Chapman agreed to pay Hootman on the basis of specific results obtained vis-a-vis the litigation. Section II(2) of the fee agreement between Hootman and Chapman states in pertinent part:

> If no cash recovery is obtained but [Hootman] is successful in reducing or eliminating the note amount, [Hootman] shall be compensated at a rate of ten percent (10%) of the amount reduced from the original principle [sic] amount of $356,000.00 and [Chapman] shall be obligated to pay [Hootman] $1000.00 per

month until the full amount owed is paid off.

If a cash recovery is obtained and [Hootman] is successful in reducing or eliminating the note amount, [Hootman]'s compensation shall be fifty percent (50%) of any cash recovery and [Hootman] shall be compensated at a rate of ten percent (10%) of the amount reduced from the original principal amount of $356,000.00, and [Chapman] shall be obligated to pay [Hootman] $1000.00 per month until the full amount owed is paid off.

Hootman filed one state lawsuit and two federal lawsuits on behalf of Chapman under the parties' fee agreement. In 1994, Hootman negotiated a settlement on Chapman's behalf. Under the terms of the settlement, Chapman was to have no personal liability to the FDIC in the event Boothe (the prior lien holder on the property) prevailed in the lawsuit Chapman had filed against him (the "Boothe Litigation") and title to the Hardin County property was found to be vested in Boothe. In December 1995, the trial court in the Boothe Litigation ruled that Boothe held legal title to the property and that Chapman remained personally liable on the promissory note he had signed to purchase the property. At that point, the sums due on Chapman's note held by the FDIC would have exceeded $443,000, but under Chapman's settlement agreement with the FDIC (negotiated by Hootman), Chapman's financial obligation had been completely eliminated.

Despite the fact that his debt to the FDIC had been eliminated through Hootman's efforts, Chapman took the position that Hootman was not entitled to any fee because he failed to obtain a cash recovery. According to Chapman, under the second provision of Section II(2) cited above, *both* a cash recovery *and* the elimi-

nation of the debt were conditions precedent to Hootman's entitlement to a fee. Hootman argues that Chapman's strained interpretation ignores the express language of the first and operative provision cited above, which entitles Hootman to ten percent (10%) of the reduction in the note balance regardless of whether any cash was recovered.

Hootman moved for summary judgment, seeking $35,600 (10% of the amount of the eliminated obligation), plus prejudgment interest and attorney's fees. Chapman filed a timely response, claiming that fact questions existed as to the meaning of Section II of the agreement. The trial court entered summary judgment in favor of Hootman for the principal amount claimed, plus interest, $1,875.00 in attorney's fees,[1] and costs of suit.

Chapman filed a motion for new trial, claiming that the trial court had improperly considered "extensive testimony from a witness not sworn" at the summary judgment hearing. Hootman filed a response to Chapman's motion for new trial, stating that no witness had testified at the summary judgment hearing. The trial court denied Chapman's motion and refused to grant a new trial.

### Issues on Appeal

Chapman presents three issues for our review: (1) whether the trial court erred in hearing testimony at a summary judgment hearing; (2) whether the trial court erred in excluding evidence offered by the non-movant; and (3) whether the trial court erred in failing to interpret the parties' fee agreement according to its plain meaning. The sole issue Hootman presents by cross-point is whether Chapman should be sanctioned for filing a frivolous appeal.

---

1. Chapman disputed Hootman's entitlement to attorney's fees on his breach of contract claim as well as the amount of fees Hootman sought to recover in connection with his law-

suit against Chapman. However, the parties later stipulated that reasonable attorney's fees for the handling of Hootman's claim against Chapman were $1,875.00.

### Standard of Review for Summary Judgment

The movant's initial burden requires a showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). If the movant's motion and summary judgment proof facially establish his right to judgment as a matter of law, then the burden shifts to the non-movant to raise a fact issue sufficient to defeat summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *See Nixon,* 690 S.W.2d at 548–549; *see also Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995).

### Oral Testimony at the Summary Judgment Hearing

■ In the first issue he presents, Chapman argues that the trial court erred in hearing testimony of a nonparty at the summary judgment hearing. A hearing on a motion for summary judgment is purely one of law and no oral testimony is allowed at the hearing. *See* Tex.R. Civ. P. 166a(c); *Martin v. Cohen,* 804 S.W.2d 201, 203 (Tex.App.—Houston [14th Dist.] 1991, no writ). Chapman, however, has not identified the witness that purportedly testified at the hearing, nor is there anything in the record (other than the unsubstantiated allegation in Chapman's motion for new trial) to indicate that the court took testimony, sworn or otherwise, at the summary judgment hearing. Matters that are not part of the record may not be considered on appeal. *See Perry v. S.N.,* 973 S.W.2d 301, 303 (Tex.1998); *America Online, Inc. v. Williams,* 958 S.W.2d 268, 278 n. 4 (Tex.App.—Houston [14th Dist.] 1998, no pet.). As appellant, Chapman has the burden of demonstrating that the record supports his contentions. By failing to do so, he has waived appellate review of this point. *See* Tex.R.App. P. 38.1(h); *Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc.,* 889 S.W.2d 666, 671 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

### Exclusion of Summary Judgment Evidence

■ In his second issue, Chapman complains that the trial court excluded his summary judgment evidence. There is no order or other reference in the record to indicate that the trial judge excluded any evidence proffered by either party. Having failed to demonstrate that the record supports this contention, Chapman has waived this complaint. *See* Tex.R.App. P. 38.1(h).

### Contract Interpretation

■ In his final issue, Chapman contends that the trial court erred in failing to interpret the contract according to its plain meaning. Although Chapman now claims that "[t]he language of the engagement agreement is susceptible to a definite interpretation without resorting to parole [sic] evidence," in the court below, he claimed that the contract was ambiguous "because it failed to clearly state the intentions of the parties to the agreement." In response to Hootman's summary judgment motion, Chapman argued that there was a disputed fact issue about the interpretation of the contract's terms. Under Chapman's view, "a specific pair of circumstances must occur together in order for [Hootman] to earn his fee"-(1) a cash recovery *and* (2) an elimination of the note amount. We do not agree.

■ The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). If an instrument is worded so that it can be given an

exact or certain legal interpretation, it is not ambiguous and a court can construe the contract as a matter of law. *Louisiana Natural Gas Pipeline, Inc. v. Bludworth Bond Shipyard, Inc.*, 875 S.W.2d 458, 461 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Absent a finding of ambiguity, a court must interpret the meaning and intent of a contract from the four corners of the document without the aid of extrinsic evidence. *Carrabba v. Employers Cas. Co.*, 742 S.W.2d 709, 716 (Tex.App.—Houston [14th Dist.] 1987, no writ). Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996).

■ Chapman claims that it was improper for the trial court to have entered summary judgment because he had "raised a fact issue on the element of the ambiguity of the contract terms." Whether a contract is ambiguous is a question of law. *See Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983). Therefore, Chapman could not and did not raise a fact issue on the question of ambiguity.

The fee agreement at issue in this case is not ambiguous. The express language of the contract clearly supports Hootman's interpretation. Section II(2) specifically provides that even if no cash recovery is obtained, Hootman "shall be compensated at a rate of ten percent (10%) of the amount reduced from the original principal amount of $356,000.00." Chapman completely ignores this provision and bases his interpretation entirely on the provision that immediately follows (the second one cited above). The second provision was not intended to address the situation presented here (*i.e.*, obtaining no cash recovery but eliminating the note amount), but applied to another scenario—one in which Hootman would receive an additional amount if he obtained a cash recovery in addition to reducing or eliminating the note amount. The applicable provision of the agreement (the first one cited above) did not require Hootman to recover cash for Chapman from the FDIC as a condition to Hootman's entitlement to a fee for eliminating Chapman's note obligation. The intent of the parties, as plainly expressed in the fee agreement, was for Hootman to be compensated in an amount equal to ten percent (10%) of any reduction in the principal amount of Chapman's debt ($356,000) and for Hootman to recover an additional amount if he were also successful in obtaining a cash recovery. Chapman's interpretation is patently unreasonable and is belied by the express language of the agreement.

It is undisputed that the settlement Hootman negotiated entirely eliminated Chapman's debt to the FDIC. This event triggered Chapman's obligation to pay Hootman $35,600 (10% of the amount eliminated). Because there is no genuine issue of material fact as to Hootman's entitlement to payment, the trial court correctly entered summary judgment for Hootman. We overrule Chapman's point of error and affirm the judgment of the trial court.

### Sanctions for Filing of Frivolous Appeal

■ Hootman seeks sanctions against Chapman under Rule 45, Texas Rules of Appellate Procedure,[2] for the filing of a frivolous appeal, citing as grounds (1) Chapman's failure to cite to the record or present authority in support of his first two issues on appeal; (2) Chapman's reliance on an inapplicable provision of the contract made the subject of the suit; and

---

**2.** Rule 45, entitled "Damages for Frivolous Appeals in Civil Cases," reads in pertinent part:

 If the court of appeals determines that an appeal is frivolous, it may -on motion of any party or on its own initiative, after notice and a reasonable opportunity for response - award each prevailing party just damages.

(3) Chapman's unjustified use of the appellate process solely as a means of delay. Chapman has had notice of Hootman's request for sanctions for more than nine months, yet has failed to respond in any way.

 Whether to grant sanctions is a matter of discretion, which we exercise with prudence and caution, and only after careful deliberation. *Casteel–Diebolt v. Diebolt*, 912 S.W.2d 302, 306 (Tex.App.— Houston [14th Dist.] 1995, no writ). Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious. *City of Houston v. Crabb*, 905 S.W.2d 669, 676 (Tex.App.—Houston [14th Dist.] 1995, no writ). Where an appellant's argument on appeal fails to convince the court, but has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment, sanctions are not appropriate. *General Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex.1991) (interpreting former Tex.R.App. P. 84).

 In determining whether sanctions are appropriate, we carefully consider the record from the appellant's point of view at the time the appeal was filed. *See City of Alamo v. Holton*, 934 S.W.2d 833, 837 (Tex.App.—Corpus Christi 1996, no writ). Among the factors we consider are whether the appellant had a reasonable expectation of reversal and whether he pursed the appeal in bad faith. *Tate v. E.I. DuPont de Nemours & Co.*, 954 S.W.2d 872, 875 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *Color Tile, Inc. v. Ramsey*, 905 S.W.2d 620, 624 (Tex.App.— Houston [14th Dist.] 1995, no writ). The fact that no response is filed to a cross-point requesting penalties is itself a factor to consider in determining whether an appeal is frivolous. *See Tate*, 954 S.W.2d at 875.

In applying the various factors to determine whether this is an appropriate case for sanctions, Chapman's appeal does not fare well. Given the plain terms of the contract, viewed from Chapman's point of view at the time this appeal was filed, he could not have had any reasonable expectation that this court would reverse the ruling of the lower court. In making his argument on appeal, Chapman neither addressed the operative provision of the contract nor proffered any reason why it was not applicable. He made no attempt to explain why the provision on which the trial court relied to rule against him should not control the disposition of the case, nor did he even attempt to address the matter. Instead, Chapman took the anomalous position that the contract was unambiguous *and* presented a "fact question" on ambiguity.

Chapman's appeal also has other earmarks of a bad faith filing. His brief fails to give appropriate citations to authorities and the record,[3] a fact which is not altogether surprising given the lack of support for his factual contentions in the record and the lack of legal authority to support his arguments on appeal. In the prayer of his brief, Chapman asks this court to reverse the judgment of the trial court and to render judgment for him, a remedy that is clearly not available given the procedural posture of this case.[4] Perhaps most indicting is the fact that Chapman has not responded to Hootman's cross-point asserting that the appeal is frivolous, nor has he otherwise challenged Hootman's claim for damages as sanctions under Rule 45, despite notice and an opportunity to do so.

---

**3.** *See Lewis v. Deaf Smith Elec. Coop., Inc.*, 768 S.W.2d 511, 514 (Tex.App.—Amarillo 1989, no writ)(holding that where appellant's statement, arguments, and cited authorities are minimal, and authorities cited only tenuously relate to appellant's claimed points of error, the appeal is frivolous, warranting award of a ten percent penalty under Rule 84).

**4.** Chapman did not file a cross-motion for summary judgment in the court below. Where the only issue is whether the appellee's motion for summary judgment was improvidently granted, a rendition on appeal is improper. *Chevron U.S.A., Inc. v. Simon*, 813 S.W.2d 491 (Tex.1991) (per curiam).

A party's decision to appeal should be based on professional judgment made after careful review of the record for preserved error in light of the applicable standards of review. Here, it is obvious that Chapman was motivated by other factors in pursuing his appeal. No amount of wishful thinking could have led Chapman to a reasonable belief that this court would overrule the trial court's judgment based on the issues he raised on appeal, especially given the inadequate briefing and meritless arguments. There is no room at the courthouse for frivolous litigation. When a party pursues an appeal that has no merit, it places an unnecessary burden on both the appellee and the courts. More importantly, it unfairly deprives those litigants who pursue legitimate appeals of valuable judicial resources.

We impose appellate sanctions only where the record clearly shows the appellant had no reasonable expectation of reversal, and that he did not pursue the appeal in good faith. *Finch v. Finch,* 825 S.W.2d 218, 226 (Tex.App.—Houston [1st Dist.] 1992, no writ) (interpreting former Rule 84, Texas Rules of Appellate Procedure). It is not unreasonable to infer that Chapman pursued this appeal in bad faith and for improper purposes, including delay and harassment. The numerous deficiencies in Chapman's brief, coupled with his failure to challenge Hootman's request for sanctions, lead to the inescapable conclusion that his appeal is frivolous. We find that Chapman's filing of this appeal warrants the assessment of damages under Rule 45. Accordingly, we sustain Hootman's cross-point and order Chapman to pay Hootman damages of $5000, a sum representing the reasonable attorney's fees and related expenses Hootman incurred in responding to this appeal.

The judgment of the trial court is affirmed.