# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00046-CV

**Brian Paul Hunt, Appellant**

**v.**

**CIT Group/Consumer Finance, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-06-003799, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Brian Paul Hunt appeals a district court's judgment in favor of appellee CIT Group/Consumer Finance (CIT) on claims of wrongful foreclosure and fraud. The judgment declared void a foreclosure sale of real property and a subsequent conveyance of the property, awarded CIT $58,000 in attorney's fees, and granted CIT other relief. We will affirm the judgment. Also, on motion of CIT, we will award CIT $5,000 as just damages against Hunt for filing a frivolous appeal.

## BACKGROUND

The real property at issue in this case is a condominium unit on Bee Caves Road in Austin. The jury heard evidence that, in 2003, the original owners of the property, David and Jamie McKenzie, took out a home-equity loan in the amount of $608,000, executing a promissory note made payable to Finance America LLC. The note was secured by a deed of trust

in the property executed by the McKenzies and Finance America and recorded in the Travis County real property records. Subsequently, Finance America sold the note and assigned its interests in the deed of trust to CIT.

The McKenzies eventually fell behind on their loan payments as well as their property taxes. In 2004, Travis County placed a tax lien on the property in the amount of $4,379.22. In June 2005, David McKenzie executed a promissory note payable to Exodus Tax Specialists for the purpose of securing funds to pay the property taxes he owed. Dessie Maria Andrews, as "trustee" for "Exodus Tax Specialists" (she would later characterize Exodus in court filings as a d/b/a of herself) paid Travis County the $4,379.22 in taxes owed on the property and obtained a tax lien deed of trust on the property. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(a)(2), (a-1), (b), 2005 Tex. Gen. Laws 3717, 3720-21 (amended 2007, 2009) (current version at Tex. Tax Code Ann. § 32.06(a)(2),(a-1)-(a-3) (West 2008 & Supp. 2009)). Subsequently, asserting that David McKenzie had defaulted on his note, Exodus foreclosed on the tax lien deed of trust and appointed appellant Hunt substitute trustee to sell the property. On October 4, 2005, Hunt executed a substitute trustee's deed reflecting that "Cornerstone Limited" (which, the evidence indicated, shared the same address as both Andrews and Exodus Tax Specialists) had purchased the property for $550,000. The deed recited that: "[n]otices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law;" Cornerstone "was the highest bidder at the public auction, for the amount of sale in the manner prescribed by law;" the foreclosure sale had begun at the time stated in the Notice of Sale or within three hours thereafter, in the area of

2

the Travis County courthouse designated for such sales; and "[a]ll matters, duties, and obligations of [Exodus] were lawfully performed . . . including compliance with section 32.06 of the Texas Tax Code."

Contrary to the representations in the substitute trustee's deed that he executed, Hunt later admitted at trial that he did not comply with requirements that he serve McKenzie with notice of the sale by certified mail and did not file the foreclosure notice with the Travis County Clerk's office. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(c)(2), 2005 Tex. Gen. Laws 3717, 3721 (amended 2007, 2009) (current version at Tex. Tax Code Ann. § 32.06(c)(2) (West 2008 & Supp. 2009)); Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 14, sec. 32.065(b)(5), 2005 Tex. Gen. Laws 3717, 3722 (amended 2007, 2009) (current version at Tex. Tax Code Ann. § 32.065(b)(5) (West 2008 & Supp. 2009)); Act of May 24, 2005, 79th Leg., R.S., ch. 555, § 1, sec. 51.002(b)(2)-(3), 2005 Tex. Gen. Laws 1482, 1482 (amended 2007) (current version at Tex. Prop. Code Ann. § 51.002(b)(2)-(3) (West Supp. 2009)). There was also uncontroverted evidence that neither CIT nor Finance America were given notice of the foreclosure sale in the required manner. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 14, sec. 32.065(b)(6), 2005 Tex. Gen. Laws 3717, 3722 (current version at Tex. Tax Code Ann. § 32.065(b)(6) (West 2008 & Supp. 2009)). Further, Hunt conceded that the amount of sale reflected in the substitute trustee's deed was incorrect and that no payment was tendered to him for the property.

Later in the same month, Andrews, now acting on behalf of Cornerstone, purported to sell the property to Kerry Cairns. Cornerstone financed the entire purchase price, which Cairns was to repay not later than April 30, 2006. Cairns and Cornerstone executed a promissory note

3

secured by a deed of trust in the property. As of the time of trial in November 2008, Cairns had not paid off the amount owed to Cornerstone, but Cornerstone had not foreclosed its lien.

CIT learned of the foreclosure and subsequent conveyance of the property to Cairns after it began foreclosing its lien on the property after the McKenzies defaulted on their loan in August 2005. After learning of these purported conveyances, CIT made redemption requests to pay the taxes so it could take back the property and foreclose. After Andrews refused, CIT sued Exodus, Cornerstone, Andrews, Hunt, and Cairns, alleging wrongful foreclosure, fraud, and civil conspiracy, and seeking declaratory judgments that CIT was entitled to redemption under tax code section 32.06 and disbursement of excess proceeds. CIT also named the McKenzies as defendants and sought an order permitting non-judicial foreclosure on the property.

The McKenzies did not answer or appear. As for the remaining defendants, the record reflects rather tumultuous proceedings below in which Hunt, Andrews/Exodus/Cornerstone, and Cairns each attempted to represent himself or herself and made numerous filings advancing arguments that were frequently not cognizable in law and sometimes consisted of inflammatory attacks on CIT or the district court. Ultimately, CIT's claims were tried to a jury. The district court submitted, and the jury found, that:

- CIT was a junior lien holder in the property;

- the foreclosure sale by Exodus to Cornerstone was not a public sale at auction;[1]

---

[1] *See* Act of May 19, 1987, 70th Leg., R.S., ch. 540, § 1, sec. 51.002(a), 1987 Tex. Gen. Laws 2174, 2174 (current version at Tex. Prop. Code Ann. § 51.002(a) (West 2007 & Supp. 2009)) ("A sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month.").

4

- the sale was not held between 10 a.m. and 4 p.m. on the first Tuesday of a month;[2]

- the sale did not take place at the Travis County courthouse;[3]

- notice of the sale was not posted at least 21 days before the sale date;[4]

- a copy of the sale notice was not filed with the Travis County clerk;[5]

- written notice of the sale was not served by certified mail on David McKenzie at least 21 days before the sale date;[6]

---

[2] *See id.*

[3] *See id.* ("[T]he sale must take place at the county courthouse in the county in which the land is located . . . .").

[4] *See* Act of May 24, 2005, 79th Leg., R.S., ch. 555, § 1, sec. 51.002(b), 2005 Tex. Gen. Laws 1482, 1482 (amended 2007) ("Notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by: (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold . . . .").

[5] *See* Act of May 24, 2005, 79th Leg., R.S., ch. 555, § 1, sec. 51.002(b)(2), 2005 Tex. Gen. Laws 1482, 1482 (amended 2007) ("Notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by: . . . (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1) . . . .").

[6] *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 14, sec. 32.065(b)(5), 2005 Tex. Gen. Laws 3717, 3722 (amended 2007, 2009) ("Notwithstanding any agreement to the contrary, a contract entered into under Subsection (a) between a transferee and the property owner under Section 32.06 that is secured by a priority lien on the property shall provide for a power of sale and foreclosure under Chapter 51, Property Code, and: . . . (5) requiring the transferee to serve foreclosure notices on the property owner at the property owner's last known address in the manner required by Sections 51.002(b), (d), and (e), Property Code, or by a commercially reasonable delivery service that maintains verifiable records of deliveries for at least five years from the date of delivery . . . ."); Act of May 24, 2005, 79th Leg., R.S., ch. 555, § 1, sec. 51.002(b)(3), 2005 Tex. Gen. Laws 1482, 1482 (amended 2007) ("Notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by: . . . (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt is obligated to pay the debt.").

- written notice of the sale was not served by certified mail on Finance America at least 21 days before the sale date;[7]

- an irregularity occurred in the foreclosure sale of the property by Exodus to Cornerstone, and the irregularity caused a grossly inadequate price; and

- Hunt, Andrews, Exodus, and Cornerstone committed fraud against CIT in connection with the sale of the property.

The district court also submitted the amount of CIT's attorney's fees to the jury, which awarded $58,000 in trial-level fees and a total of $35,000 in contingent appellate fees.[8]

Between the jury's verdict and the final judgment, Hunt and Andrews moved to disqualify the judge who had presided over the trial, the Hon. Stephen Yelenosky. This motion was assigned to the Hon. Paul Davis, who denied it. Judge Davis also awarded CIT $2,495.00 in attorney's fees incurred in responding to the motion, imposed jointly and severally against Hunt and Andrews.

---

[7] *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 14, sec. 32.065(b)(6), 2005 Tex. Gen. Laws 3717, 3722 ("Notwithstanding any agreement to the contrary, a contract entered into under Subsection (a) between a transferee and the property owner under Section 32.06 that is secured by a priority lien on the property shall provide for a power of sale and foreclosure under Chapter 51, Property Code, and: . . . (6) requiring, at the time the foreclosure notices required by Subdivision (5) are served on the property owner, the transferee to serve a copy of the notice of sale in the same manner on the mortgage servicer or the holder of all recorded real property liens encumbering the property that includes on the first page, in 14-point boldfaced type or 14-point uppercase typewritten letters, a statement that reads substantially as follows: 'PURSUANT TO TEXAS TAX CODE SECTION 32.06, THE FORECLOSURE SALE REFERRED TO IN THIS DOCUMENT IS A SUPERIOR TRANSFER TAX LIEN SUBJECT TO RIGHT OF REDEMPTION UNDER CERTAIN CONDITIONS. THE FORECLOSURE IS SCHEDULED TO OCCUR ON THE (DATE).'").

[8] While the jury was deliberating, it sent out a question inquiring, "Can the jury award more fees than [CIT's] attorney requested? And, is there a limit?"

6

After signing an initial version of the judgment on January 15, 2009, the district court signed an amended final judgment on February 3. The court accepted the jury's findings and made several declarations based on those findings. It declared that the Exodus-to-Cornerstone foreclosure sale was wrongful and void and set it aside. The court further declared void the substitute trustee's deed, Cornerstone's subsequent sale of the property to Cairns, and all liens and security interests held by Cornerstone against Cairns for the property. It also awarded CIT the attorney's fees the jury had found jointly and severally against Hunt, Andrews, Exodus, Cornerstone, and Cairns.

The district court made additional declarations having the effect of enforcing a right of redemption on the part of CIT. It declared that the payoff amount on Exodus's tax-lien deed of trust (which had later been transferred to Cairns) was $4,379.22 and that Hunt, Andrews, Exodus, Cornerstone, and Cairns were each entitled to a credit in that amount against the attorney's fees award, leaving each jointly and severally liable for $53,620.78 in trial-level attorney's fees, plus any appellate fees that might be incurred later. The district court also declared that the payoff amount on the tax-lien deed of trust had been paid in full and that the tax-lien deed of trust was released.

Finally, the district court rendered judgment against the McKenzies that CIT was immediately authorized to commence proceedings for non-judicial foreclosure of the property.

This appeal ensued.

**ANALYSIS**

Both Hunt and Andrews, his co-defendant below, have signed an appellants' brief. Before turning to the issues presented, we must first address a threshold question of our subject-

7

matter jurisdiction. CIT has moved to dismiss any appeal that Andrews or, for that matter, Cairns[9] purports to assert on the ground that each failed to invoke this Court's subject-matter jurisdiction by filing a timely notice of appeal.

There are several notices of appeal in the clerk's record:

(1)     A November 20, 2008 "Defendants' Notice of Interlocatory [sic] Appeal" on behalf of Hunt, Andrews, and Cairns, and signed by each. The file stamp on this document reflects that it was filed with the district clerk on the same day as, but after, the jury's verdict and several weeks before final judgment. This notice does not reference any specific order of the district court.

(2)     A January 5, 2009 "Notice of Appeal of Temporary Restraining Order" on behalf of Hunt, and signed solely by him, appealing a temporary restraining order that the district court had issued to prevent him from attempting to sell the property again.

(3)     A January 15, 2009 notice of appeal on behalf of Hunt, and signed solely by him, appealing the initial version of the final judgment that the district court signed on that same day.

(4)     Two amended notices of appeal on behalf of Hunt and signed solely by him, dated February 6 and 10, that appeal the amended version of the final judgment signed on February 3, as well as Judge Davis's order on his motion to disqualify Judge Yelenosky.

Thus, although Hunt timely perfected his appeal from the final judgment, *see* Tex. R. App. P. 26.1, 27.3, the sole notice of appeal that Andrews and Cairns filed was the November 20, 2008 "Notice of Interlocatory [sic] Appeal," in which Hunt also joined. This notice, which they apparently filed following the jury's verdict but well before the final judgment, does not purport to

---

[9] Although Cairns has not signed the brief and is not identified as one of its authors or participants, the brief does identify him as a party to the appeal.

appeal from the judgment—to the contrary, it is styled an "interlocuary [sic] appeal." Under these circumstances, we hold that Andrews and Cairns have each failed to timely perfect an appeal from the district court's final judgment.

On the other hand, rule of appellate procedure 27.1 provides that a "premature" notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for filing the appeal. *See id.* R. 27.1. However, for several reasons, we conclude that the November 20, 2008 notice did not invoke our jurisdiction over the final judgment or any interlocutory order that was ultimately merged into that judgment. In addition to the fact that the November 20, 2008 notice does not purport to appeal from the district court's judgment, it does not identify any interlocutory order that is being appealed and, thus, did not invoke our jurisdiction over any such order. *Id.* R. 25.1(d) ("The notice of appeal must . . . (2) state the date of the judgment or order appealed from . . . .").[10] Andrews and Cairns have not argued otherwise; indeed, they have not responded to CIT's motion to dismiss. Finally, we observe that Hunt has filed subsequent notices of appeal addressed to the final judgment, yet neither Andrews nor Cairns has joined in these notices or timely filed their own notices of appeal from the final judgment. In these circumstances, we cannot conclude that Andrews or Cairns has perfected an appeal from the final judgment by virtue of their November 20, 2008 "Notice of Interlocuary [sic] Appeal" and rule 27.1. *See Gee v. Mirwis*, No. 01-04-00883-CV, 2006 WL 859286, at *4 n.4 (Tex. App.—Houston [1st Dist.] Mar. 30, 2006,

---

[10] Also, the record does not reflect that Andrews, Cairns, or Hunt ever took further action, beyond filing the November 20, 2008 notice, to prosecute an interlocutory appeal, including forwarding a copy of their notice to this Court, *see* Tex. R. App. P. 25.1(e), and no such appeal was ever docketed here.

order) (mem. op.) (holding earlier notice of appeal purporting to be from interlocutory order was not a prematurely filed notice of appeal that could be considered to have perfected appeal when appellate court determined subsequent notice of appeal filed after final judgment was signed was untimely).

Consequently, we lack subject-matter jurisdiction to grant Andrews and Cairns appellate relief. Tex. R. App. P. 2, 25.1(b), 26.3; *Gee*, 2006 WL 859286, at *2 ("The time for filing a notice of appeal is jurisdictional in nature, and absent a timely filed notice of appeal or extension request, we must dismiss an appeal for lack of jurisdiction."). We grant CIT's motion to dismiss any purported "appeal" of Andrews and Cairns for want of subject-matter jurisdiction. *See* Tex. R. App. P. 42.3(a). We note, however, that even if Andrews or Cairns had invoked our jurisdiction, our rejection of the arguments advanced by Hunt (discussed below) would foreclose their entitlement to relief as well.

We now turn to the issues Hunt raises on appeal. Hunt presents eleven issues, which we will address in turn.[11]

In his first issue, Hunt complains that he was denied "equality under the law" and "denied access to the law resulting in outlawry." The substance of Hunt's complaint appears to relate to a ruling by the district court granting a motion in limine filed by CIT addressed to the offering of evidence or comments regarding the applicability, contents, and effective dates of

---

[11] As in the district court, Hunt is acting pro se on appeal. We have attempted to fairly construe Hunt's issues and the substance of his arguments. *See* Tex. R. App. P. 38.9; *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) (per curiam). Nonetheless, it remains that pro se litigants are held to the same procedural and substantive standards as other litigants. *See Mansfield State Bank v. Cohn*, 573 S.W.3d 181, 184-85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves.").

any law. Hunt misunderstands the effect of a ruling on a motion in limine. A trial court's ruling on a motion in limine is not a ruling that excludes or admits evidence. *Fort Worth Hotel L.P. v. Enserch Corp.*, 977 S.W.2d 746, 757 (Tex. App.—Fort Worth 1998, no pet.). The purpose of a motion in limine is to obtain a tentative ruling that prevents a party from offering certain evidence or referring to certain matters in front of the jury without first approaching the bench for a ruling. *Id.* Consequently, a trial court's ruling on a motion in limine in itself "is never reversible error," *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex. 1963), and it "preserves nothing for review." *Kaufman v. Commission for Lawyer Discipline*, 197 S.W.3d 867, 873 (Tex. App.—Corpus Christi 2006, pet. denied). Even if a trial court makes an erroneous ruling on a motion in limine, there is no reversible error unless the court erroneously admits or excludes evidence over a proper objection at trial. *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex. 1984).

Hunt fails to provide any citation to the record demonstrating that he or any other defendant attempted to offer evidence and obtained an adverse ruling from the court. *See* Tex. R. App. P. 33.1(a); *Kaufman*, 197 S.W.3d at 874. He has presented nothing for review. We overrule Hunt's first issue.

In his second issue, Hunt argues that the district court lacked subject-matter jurisdiction because CIT lacked standing to assert its claims—an assertion that Hunt and other defendants repeatedly raised unsuccessfully in the district court.[12] Hunt bases this standing

---

[12] Hunt also asserts in the "Summary of Argument" portion of his brief that CIT lacked "capacity." He does not return to capacity elsewhere in his brief. Leaving aside the fact that lack of capacity is not a jurisdictional limitation, *see Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845,

11

challenge on his view that CIT was required to prove that it was a record owner of the property before Exodus sold the property to Cornerstone. As CIT observes, Hunt presents no authority in support of this notion, and it is without merit. The general test for standing in Texas courts is whether there is a "real" (i.e., justiciable) controversy between the parties that actually will be determined by the judicial declaration sought. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). CIT's pleadings and proof at trial demonstrate that CIT, as a lienholder in the property, had a justiciable interest sufficient to invoke the district court's subject-matter jurisdiction over its claims. We overrule Hunt's second issue.

In his third issue, Hunt contends that CIT's suit was challenging the validity of a "tax sale" and fails because CIT did not pay the property taxes into the registry of the court before commencing suit and "lacks consideration." Similarly, in his tenth issue, Hunt complains that "CIT never paid taxes into the registry of the court" and that this "invalidates the suit." As CIT points out, this case does not involve the validity of a tax sale, which is governed by chapter 34 of the tax code, but instead concerns a tax-lien transfer, which is governed by chapter 32 of the tax code. *Compare* Tex. Tax Code Ann. ch. 32 (West 2008 & Supp. 2009) *with* Tex. Tax Code Ann. ch. 34 (West 2008 & Supp. 2009). Consequently, the procedural requirements Hunt references are inapposite. We overrule Hunt's third and tenth issues.

In his fourth issue, Hunt complains that Judge Yelenosky "struck" a November 6, 2008 order signed by the Hon. Gisela D. Triana-Doyal, a prior order by the Hon. Lora Livingston,

849 (Tex. 2005) (contrasting capacity and standing), CIT correctly observes that Hunt has waived this argument by failing to raise it in a verified pleading. *See* Tex. R. Civ. P. 93(1)-(2); *Lovato*, 171 S.W.3d at 849.

12

and a subpoena for document production issued by defendants to CIT.  Hunt contends that Judge Yelenosky "struck" the orders and subpoena by granting CIT's entire motion in limine, and in particular, the motion prohibiting defendants from making requests before the jury for information from CIT's counsel's file.  Hunt characterizes the November 6, 2008 order as "a sanction against [CIT's counsel] for his behavior," but CIT points out that the order in fact relates to CIT's motion for continuance and that a motion for sanctions that Andrews had filed was actually denied by the court on November 12, 2008.  CIT primarily contends that Hunt has waived this issue because of his failure to cite the record or authority or provide substantive analysis.

We agree that Hunt's briefing on these points presents nothing for this Court's review.  Hunt fails to show where he raised these issues before the trial court and to explain how they resulted in reversible error.  *See* Tex. R. App. P. 33.1, 44.1.  Hunt fails to explain how the grant of CIT's motion in limine negated the effect of the court's prior orders regarding the production of documents, or how CIT's supposed failure to produce documents harmed the defendants.  Hunt never describes the documents CIT had been ordered to produce, and his brief does not cite to any discovery requests, objections, or motions that were made.  Only one of the orders regarding discovery to which Hunt refers appears in the record.  That order, the November 6, 2008 order signed by Judge Triana-Doyal, continues the trial and orders that "at the first hearing" CIT is to provide "all original documents which Judge Livingston previously ordered to be produced to defendants." There is no order signed by Judge Livingston in the record.  We overrule Hunt's fourth issue.  *See id.* R. 33.1, 44.1.

In his fifth, sixth, and eighth issues, Hunt, in substance, claims error in the jury charge. He complains of numerous asserted "irregularities" in the jury charge, including misinterpretations of the law and immaterial questions. During the charge conference, Hunt objected to one proposed question—the use of the words "fraud" and "misrepresentation" in the jury question submitting CIT's fraud claim—and his objection was overruled. The charge used these words to explain to the jury the legal definitions of fraud and misrepresentation. Hunt provides no substantive analysis to explain why the use of these words caused reversible error. *See id*. R. 44.1. We overrule these issues.

In his seventh issue, Hunt argues that "[n]one of the evidence that was before the jury could substantiate the findings." We construe this issue as a challenge to the legal and/or factual sufficiency of the evidence supporting the jury's findings. Hunt failed to preserve either type of sufficiency challenge. In a jury trial, challenges to the legal sufficiency of the evidence are preserved by "(1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue or (5) a motion for new trial." *Cecil v. Smith*, 804 S.W.2d 509, 511 (Tex. 1991). Complaints of the factual insufficiency of the evidence supporting a jury finding or that a jury finding is against the overwhelming weight of the evidence must be raised in a motion for new trial. Tex. R. Civ. P. 324(b)(2)-(3). Neither Hunt nor any other defendant made any such motion or objection. Therefore, Hunt has failed to present anything for review. Moreover, Hunt fails to present argument, authorities, record citations, or other explanation why the evidence at trial fails to support any specific findings. We overrule Hunt's sufficiency challenge.

14

Also, within both his fifth and seventh issues, Hunt complains, in substance, of improper jury argument. Hunt asserts that the district court erred in permitting CIT's counsel to make improper jury arguments to "vilify the defendants" in violation of the court's obligation under Texas Rule of Civil Procedure 269 "to stop the defamation" without prompting, citing *Texas Employers' Ins. Co. v. Guerrero*, 800 S.W.2d 859, 867 (Tex. App.—San Antonio 1990, writ denied). Hunt argues that "[t]here was no evidence of fraud, no evidence of improper behavior," but the defamation by CIT's counsel "so inflamed the jury that the jury ignored the evidence, which were the only facts before it, and found in favor of the rhetoric." He concludes that this is one of the "rare instances of incurable harm from improper argument," citing *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979).

CIT responds that Hunt has waived this issue on appeal because he has failed to cite to the record or any facts supporting his assertion and he has not met his burden under *Reese* of showing that improper jury argument occurred. *See id.* We agree. To show improper jury argument, Hunt must prove (1) an error, (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, (4) that was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge, and (5) that the argument constituted reversibly harmful error by its nature, degree, and extent. *Id.* All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding, and (7) a reversal must come from an evaluation of the whole case from voir dire to closing argument. *Id.* at 840. Hunt fails to meet this burden because he has not provided record citations showing which statements are the allegedly improper argument or that he preserved

15

error by making a proper objection and asking for a ruling. Tex. R. App. P. 33.1, 38.1(i). He also fails to offer any substantive analysis regarding whether the allegedly improper argument was unsupported by the evidence or was incurable by instruction or other remedy. *Id.* R. 38.1(i); *Reese*, 584 S.W.2d at 839; *see also Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009) (noting that cases finding incurable harm typically involve *unsubstantiated* attacks "on the integrity or veracity of a party or counsel, appeals to racial prejudice, or the like"). Hunt has presented nothing for review. We overrule his fifth and seventh issues.

In addition to his jury-charge complaints within his eighth issue—which posits, "Does the final order in the case reflect the remedy prayed for?"—Hunt asserts, "Although no construction permit was applied for, the only thing missing from Judge Yelenowsky's [sic] order is the kitchen sink. It is presumed that it was too heavy to attach to the document." Hunt does not explain why or how these assertions demonstrate any reversible error. We overrule Hunt's eighth issue.

In Hunt's ninth issue, he posits, "Were the property taxes, at all time [sic] since 2004, paid by Cornerstone or Cairns?" In support of this issue, Hunt asserts that "[i]t is the inviolate rule in Texas that he who pays the property tax gets the property," but he cites no authority for this proposition and provides no analysis to explain its relevance to the case. We overrule Hunt's ninth issue.

Finally, in his eleventh issue, Hunt complains of "judicial misconduct resulting in gross error." In support, Hunt revisits various complaints about the merits of the district court's

16

judgment and then launches into a series of attacks on the integrity and fairness of the presiding judge. Hunt demonstrates no reversible error.[13] We overrule Hunt's eleventh issue.

Having overruled all of Hunt's issues, we affirm the district court's judgment.

In addition to its arguments for affirming the district court's judgment, CIT requests us to sanction Hunt under Texas Rule of Appellate Procedure 45 and award $25,000 in damages. CIT contends that Hunt's appeal is frivolous. Hunt has had notice of CIT's request for sanctions for more than three months, but has not filed a response.

Under rule 45, "[i]f the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages." Tex. R. App. P. 45. To determine whether an appeal is frivolous, we apply an objective test. *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). We review the record from the advocate's viewpoint and decide whether he had reasonable grounds to believe the judgment could be reversed. *Id.* Although bad faith is no longer dispositive or necessarily even material to deciding whether an appeal is frivolous, the presence of bad faith may be relevant to determining the amount of the sanction.[14] *Id.* In addition, the fact that no response is filed to a request for sanctions is itself a factor

_____

[13] We observe that while Hunt's notice of appeal challenges Judge Davis's order denying his motion to disqualify Judge Yelenosky, he has not presented an issue, argument, or authorities that would demonstrate reversible error in that ruling.

[14] Rule 45 took effect on September 1, 1997. It replaced former rule 84 and broadened appellate courts' ability to award sanctions by omitting language in the former rule authorizing the award of "damages 'for delay' only if we found 'that an appellant ha[d] taken an appeal for delay and *without sufficient cause*.'" *Smith v. Brown*, 51 S.W.3d 376, 380 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Courts construed this language to require a finding that the appeal was taken in bad faith. *Id.* Most courts that have considered the issue have concluded that a showing

17

to consider in determining whether an appeal is frivolous. *Chapman v. Hootman*, 999 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

After reviewing the record and briefing filed in this Court, we agree with CIT that Hunt had no reasonable grounds to believe the judgment could be reversed. Our reasons include Hunt's unsupported factual statements (and misstatements), repeated failures to preserve error for appeal, and the absence of legal merit in his arguments. His arguments do not have "a reasonable basis in law" so as to "constitute[] an informed, good-faith challenge to a trial court judgment." *General Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991) (per curiam). We also find Hunt's unsubstantiated attacks on the presiding judge indicative of bad faith. Furthermore, Hunt has not challenged CIT's claim for sanctions under rule 45, despite notice and an opportunity to do so. *See id.* We hold that Hunt's appeal is objectively frivolous.

We may award "just damages" if the appeal is objectively frivolous and injured CIT. *Njuku v. Middleton*, 20 S.W.3d 176, 178 (Tex. App.—Dallas 2000, pet. denied). Hunt's filing of this appeal has caused CIT to expend time, money, effort and other resources to defend the appeal. CIT has requested an award of $25,000. Courts awarding sanctions for a frivolous appeal under rule 45 typically award attorney's fees for the appeal. *See, e.g.*, *Smith*, 51 S.W.3d at 382 ($5,000); *Chapman*, 999 S.W.2d at 125 ($5,000); *Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 2 S.W.3d 393, 397 (Tex. App.—San Antonio 1999, no pet.) ($5,000); *Diana Rivera & Assocs., P.C.*

---

of bad faith is no longer required. *Texas State Taekwondo Ass'n v. Lone Star State Taekwondo Ass'n*, No. 08-01-00403-CV, 2002 WL 1874852, at *2 (Tex. App.—El Paso Aug. 15, 2002, no pet.) (not designated for publication) (collecting cases and holding sanctions appropriate under either standard in case involving enforceable Rule 11 agreement waiving parties' right to appeal outcome of binding summary jury trial).

*v. Calvillo*, 986 S.W.2d 795 (Tex. App.—Corpus Christi 1999, pet. denied) ($8,800). Proof by affidavit is a proper method of establishing the appropriate sanction for the filing of a frivolous appeal, *Smith*, 51 S.W.3d at 382, although some courts have awarded damages even when the appellee provided no evidence of damages, *see Lee v. Aurora Loan Servs., L.L.C.*, No. 06-08-00077-CV, 2009 WL 167067, at *3 (Tex. App.—Texarkana Jan. 27, 2009, no pet.) (mem. op.) ($7,500); *Njuku*, 20 S.W.3d at 178 ($5,000); *Salley v. Houston Lighting & Power Co.*, 801 S.W.2d 230, 232 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (awarding $6,000 when trial court's judgment was non-monetary).

CIT asks us to award $25,000 without providing any basis for this amount. The judgment below has already awarded CIT $20,000 in attorney's fees for an appeal to this Court. Nevertheless, considering the nature of Hunt's conduct in this appeal, including Hunt's unsupported attacks on the district court, we award CIT an additional $5,000 against Hunt as just damages for this frivolous appeal.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: April 15, 2010

19